FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| STEPHEN KIOSK, | ) |
| Plaintiff | ) |
| v. | ) Case No. 1:13CV1267-AJT/IDD |
| THE NATIONAL ALLIANCE ON MENTAL ILLNESS, 3803 N. Fairfax Dr., Suite 100 Arlington, VA 22203 | ) |
| | ) JURY DEMANDED |
| Defendant. | ) |

## COMPLAINT
(Retaliation and Disability Discrimination in Violation of Title VII of the Civil Rights Act of 1964, as amended, the Americans with Disabilities Act, as amended, and defamation)

COMES NOW the Plaintiff, Stephen Kiosk, by and through his attorneys, The Law Office of Gerald L. Gilliard, Esq., and for his Complaint in the above-captioned action states to this Honorable Court as follows:

## NATURE OF THE ACTION

1. This is an action brought for violations of the Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, specifically 42 U.S.C. § 2000e-16(c) and 29 U.S.C. § 633a, which prohibits retaliation for protected activity, the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213, as amended, and the Rehabilitation Act of 1973, 29 U.S.C. §§ 791-794f, which prohibit discrimination on the basis of disability. The Plaintiff also alleges a defamation claim.

## PARTIES

2. Plaintiff Stephen Kiosk is an adult male U.S. citizen with qualified disabilities. At all times relevant hereto, Plaintiff Kiosk has been an employee of the National Alliance on Mental Illness ("NAMI").

3. Defendant is NAMI, a nation-wide mental health organization that advocates for access to services and treatment of mental illness.

## JURISDICTION

4. Jurisdiction of this Honorable Court is invoked pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), specifically 42 U.S.C. § 2000e-16(c) and 29 U.S.C. § 633a, the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213, as amended, and the Rehabilitation Act of 1973, 29 U.S.C. §§ 791-794f.

5. This Court has supplemental jurisdiction over the Plaintiff's state-law claim pursuant to 28 U.S.C. § 1367.

6. Venue is proper pursuant to 42 U.S.C. § 2000e-5(f) in the state of Virginia, where NAMI is located.

7. On May 29, 2012, the Plaintiff filed a charge of disability and retaliation with the Arlington Human Rights Commission, a charge that was later transferred to the Arlington Human Rights Commission, for the reason stated by EEOC due to their case load.

8. On July 13, 2013, the Plaintiff received a right to sue letter from the EEOC.

## FACTS GIVING RISE TO BELIEF

9. Plaintiff is a qualified individual with disabilities, including diagnosed schizoid personality disorder, depression, anxiety, panic and paranoia episodes, asthma, thyroid disease

2

that affects body temperature regulation and mood, stemming from a family history of trauma, mental illness, domestic violence, and patricide.

10. On December 28, 2008, the Plaintiff accepted a position with NAMI as Director of the STAR (Support), Technical Assistance and Resource Center, funded by the Substance Abuse and Mental Health Services Administration (SAMSHA).

11. The Plaintiff disclosed to NAMI verbally, on his resume, and in subsequent technical assistance tools that he suffers from the disabilities mentioned above. Mental health recovery experience was a requirement of employment and was listed in the job description.

12. During the first six months of hire in 2009, Plaintiff informed Chief Operating Officer Lynn Borton that it was necessary for him to keep his office door closed at times while concentrating on complex work and discussing sensitive issues over the phone. The Plaintiff asked for this accommodation because he is sensitive to interruptions and other distractions due to his disabilities.

13. Without ever engaging in the interactive process, Ms. Borton refused to allow the Plaintiff to work with his door closed because, according to her, NAMI has an "open door culture." A non-disabled Director was asked by the Plaintiff regarding this Chief Operating Officer's order to Plaintiff, and was informed by the other Director that she had never heard of such a requirement ("open door culture") and was not required to keep her door open during this time and other NAMI employees had never heard of an open door culture policy or mandate.

14. Nearly a year later, on or about June 1, 2010, Ms. Borton allowed the Plaintiff to work from home in order to avoid distractions.

15. Shortly before July 2009, NAMI prearranged for the Plaintiff to room with a stranger, Marshall Epstein, at a NAMI annual conference. The Plaintiff was uncomfortable with

the arrangement because of his disabilities and the sexual molestation he experienced as a child. NAMI allowed the Plaintiff to room alone.

16. Shortly before July 2011, NAMI arranged for the Plaintiff to room with Philip Qualo at another conference. The Plaintiff felt intimidated and forced to room with Mr. Qualo despite having a note from Plaintiff's doctor exempting him from rooming with other staff members for NAMI annual national meetings. While rooming together, Mr. Qualo physically attacked the Plaintiff.

17. Without ever engaging in the interactive process with the Plaintiff, NAMI denied the Plaintiff's request to room alone, ignoring his disability letter in its own Human Resources file for the Plaintiff that NAMI required him to submit for his first NAMI conference.

18. On or about May 12, 2009, the Plaintiff submitted to NAMI a performance evaluation in which he addressed concerns about NAMI's failure to accommodate disabilities and lack of commitment to cultural diversity.

19. In August 2009, the Plaintiff requested that NAMI implement disability-sensitivity training. NAMI refused to do so. In regards to the request, Ms. Borton said, "No, that would open up Pandora's box." The Plaintiff made this request multiple times, up until 2012, but NAMI continued to refuse implementing the training.

20. In August 2009, the Plaintiff issued a statement complaining of discriminatory treatment by Ms. Borton on account of his disabilities.

21. On or about January 1, 2012, the Plaintiff was asked to lower the performance rating of Mr. Qualo, an African-American employee at NAMI. The Plaintiff refused to do so because he believed it was racially motivated. The Plaintiff wrote a letter to NAMI management complaining about race discrimination on behalf of Mr. Qualo.

22. In late 2009, the Plaintiff requested to be assigned to a new supervisor in order to escape discriminatory treatment by Ms. Borton. His request was denied.

23. On or about January 15, 2012, the Plaintiff completed a performance evaluation in which he discussed feeling discriminated against by NAMI management on account of his disability.

24. On January 11, 2012 the Plaintiff submitted to Ms. Borton, and NAMI's Human Resources Manager, Blythe Laney, Mr. Qualo's performance evaluation self-ratings discussing his experience of perceiving and feeling discrimination based on racial and sexual orientation bases, and expressed his concern that the STAR Center and the Plaintiff's accomplishments were publicly ignored and dismissed in comparison to other staff and other departments who were given verbal "kudos" or statements at staff meetings from Ms. Borton and the Executive Director of NAMI, Michael Fitzpatrick.

25. In January 2011, the Plaintiff submitted his performance evaluation self-rating and comments discussing his experience of discrimination regarding his disabilities and conditions, and in a subsequent discussion shortly after with Ms. Borton felt intimidated and coerced to revise his own performance evaluation comments regarding discrimination.

26. On or about March 7, 2012, the Plaintiff asked Ms. Borton if she had any problems, issues, or concerns with his job performance. She said "no."

27. On March 15, 2012, one week after his discussion with Ms. Borton, the Plaintiff was unexpectedly issued a Performance Improvement Plan ("PIP"). The PIP stated the Plaintiff "resisted...accountability." It required that Plaintiff demonstrate compliance and fluency with federal grant requirements and submit weekly time reports to Ms. Borton.

28. On March 23, 2012, the Plaintiff's psychiatrist recorded a change in his mental health status.

29. On April 4, 2012, the Plaintiff corresponded with NAMI's Human Resources Manager, Blythe Laney, to describe his mental distress and exacerbation of his disabilities due to the PIP. The Plaintiff requested the reasons for being put on the surprise probationary period be put in writing with examples of his alleged lack of accountability. The Plaintiff received no response.

30. On April 9, 2012, the Plaintiff was hospitalized due to suffering a panic attack connected to work pressure and anxiety about the PIP.

31. On April 11, 2012, during a meeting with NAMI's Human Resources Manager, Blythe Laney, and the Executive Director, Mike Fitzpatrick, that the Plaintiff requested to discuss his increasing duress and his discrimination complaints, the Plaintiff was terminated for allegedly creating a disruptive work environment. Ms. Laney referred to a libelous letter regarding false slanderous accusations about the Plaintiff (accusations the Plaintiff had debunked in December 2010 and received a formal apology as a result). Mr. Fitzpatrick stated, "Clearly the PIP was out of the blue…your reaction to the PIP was dramatic…in the last month of actions and e-mails…you as an individual have been very disruptive to the work environment." The Plaintiff was denied an opportunity to respond to Mr. Fitzpatrick's reasoning because Mr. Fitzpatrick stated he was "as of this moment no longer employed at NAMI."

32. On April 11, 2012, Mr. Qualo was assigned to the Plaintiff's position, but resigned shortly after, on April 18, due to the immense workload passed to him as a result of Plaintiff's termination.

33. Shortly after being fired, the Plaintiff filed for unemployment benefits with the Virginia Employment Commission ("VEC"). During the April 20, 2012 "Claimant Notice of Telephonic Fact-Finding Interview," the VEC attempted to contact NAMI but received no response. As a result, the VEC ruled that NAMI failed to meet its burden to articulate a legitimate reason for the Plaintiff's termination because of any misconduct or willful disregard of the employer's expectations, policies, or procedures, and the VEC thus rule that the Plaintiff was qualified for benefits.

34. On May 29, 2012, the Plaintiff filed a charge alleging retaliation and disability discrimination with the EEOC, which was later transferred to the Arlington Human Rights Commission.

35. On July 13, 2013, the Plaintiff received a right to sue letter from the EEOC.

36. The Plaintiff was terminated by the Defendant because of his disability, and in reprisal based on protected activity, in violation of the Americans with Disabilities Act, 42 U.S.C. sections 12101-11213, as amended, the Rehabilitation Act of 1973, 29 U.S.C. sections 791-794f, as amended, and Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. sections 2000e-e17, and as further amended by section 102 of the Civil rights Act of 1991, 42 U.S.C. section 1981a.

37. As a direct and proximate result of the unlawful acts of Defendant, Plaintiff Kiosk suffered and continues to suffer lost earnings and benefits, pain, suffering, humiliation, and mental distress as described more fully in the counts below.

## COUNT I – DISABILITY DISCRIMINATION

38. Plaintiff incorporates by reference paragraphs 1-37 as fully set forth herein.

39. NAMI ignored the frustration that the Plaintiff felt as a result of having disabilities, and additionally, failed to adequately accommodate his disabilities upon request.

40. NAMI terminated the Plaintiff because of his disabilities.

41. NAMI discriminated against the Plaintiff in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213, as amended, and the Plaintiff has been damaged thereby through economic losses, lost promotional and bonus opportunities, with attendant loss of pay and other benefits associated with promotions, bonuses and awards for exceptional performance, damage in the form of emotional distress, pain and suffering, which adversely affected his enjoyment of life, and ultimately, led to the termination of his NAMI career, and additionally, personal and professional humiliation.

## COUNT II – RETALIATION

42. Plaintiff incorporates by reference paragraphs 1-41 as fully set forth herein.

43. Plaintiff engaged in activities protected by law, namely, requesting reasonable accommodations and complaining about discriminatory treatment due to his disabilities.

44. NAMI and its employees terminated the Plaintiff, an adverse action, in direct response to his requests for reasonable accommodations and his complaints of discriminatory treatment against NAMI and its employees.

45. NAMI and its employees retaliated against the Plaintiff in violation of Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. §§ 2000e-e17, and as further amended by § 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213, as amended, and the Plaintiff has been damaged thereby through economic losses, lost promotional and bonus opportunities, with attendant loss of pay and other benefits associated with promotions, bonuses

and awards for exceptional performance, damage in the form of emotional distress, pain and suffering, which adversely affected his enjoyment of life, and ultimately, led to the termination of his NAMI career, and additionally, personal and professional humiliation.

## COUNT III – FAILURE TO PROVIDE A REASONABLE ACCOMMODATION

46. Plaintiff incorporates by reference paragraphs 1-43 as fully set forth herein.

47. The Plaintiff requested a reasonable accommodation when he asked to keep his door closed to avoid distractions at the office and prevent the aggravation of his disabilities. NAMI failed to accommodate his request until a year later when they allowed the Plaintiff to work from home.

48. The Plaintiff requested a reasonable accommodation when he asked to room alone rather than with a stranger because the arrangement aggravated his disabilities. NAMI failed to accommodate this request when they forced him to room with Mr. Qualo and the Plaintiff was subsequently physically attacked by Mr. Qualo.

49. The Plaintiff requested a reasonable accommodation when, in multiple letters to NAMI management sent between 2009 and 2012, he complained of discriminatory treatment. Additionally, the Plaintiff complained of worsening symptoms of mental illness due to issuance of the PIP. NAMI failed to accommodate these concerns when they declined to engage in the required interactive process.

50. Granting the accommodations to the Plaintiff would not have been an undue burden.

51. NAMI discriminated against the Plaintiff in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213, as amended, and the Plaintiff has been damaged thereby through economic losses, lost promotional and bonus opportunities, with attendant loss

of pay and other benefits associated with promotions, bonuses and awards for exceptional performance, damage in the form of emotional distress, pain and suffering, which adversely affected his enjoyment of life, and ultimately, led to the termination of his NAMI career, and additionally, personal and professional humiliation.

## COUNT IV – DEFAMATION

52. Plaintiff incorporates by reference paragraphs 1-51 as fully set forth herein.

53. Based on the above, NAMI committed defamation against the Plaintiff when it issued a Performance Improvement Plan stating false and unsubstantiated information about the Plaintiff's work performance; namely, that the Plaintiff "resisted accountability." This information damages the Plaintiff's personal and professional reputation.

54. The PIP defames the Plaintiff in violation of Virginia law so long as it remains filed with NAMI's Human Resources Department because it is accessible to third-parties and NAMI has an obligation to provide prospective employers with any negative references about the Plaintiff.

## REQUEST FOR RELIEF

WHEREFORE, the premises considered, Plaintiff respectfully prays that this Honorable Court:

1. Enter judgment on his behalf against Defendant;
2. Award Plaintiff Kiosk lost past and future earnings, compensatory damages, and other damages;
3. Instate Plaintiff Kiosk into a Director of STAR Center position or a comparable position with all attendant benefits.

4. Award Plaintiff Kiosk his court costs, expenses, attorneys' fees, prejudgment interest and post-judgment interest;

5. Declare that Defendant's conduct is in violation of Americans with Disabilities Act, as amended, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

6. Grant such other relief as this Court deems just and proper.

THE LAW OFFICE OF GERALD L. GILLIARD, ESQ., LLC

*/s/ Gerald L. Gilliard*
Gerald L. Gilliard
Virginia State Bar #70094
1629 K Street, N.W., Suite 300
Washington, D.C. 20006
Tel. (202) 827-9753
Fax. (202) 478-1783
E-mail: ggilliard@employmentlegalteam.com

## JURY DEMAND

Plaintiff demands a trial by jury on all issues contained herein.

THE LAW OFFICE OF GERALD L. GILLIARD, ESQ., LLC

_____
Gerald L. Gilliard
Virginia State Bar #70094
1629 K Street, N.W., Suite 300
Washington, D.C. 20006
Tel. (202) 827-9753
Fax. (202) 478-1783
E-mail: ggilliard@employmentlegalteam.com